**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____

|  |  |
|---|---|
| **DONNA RIVERS,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | ) |
| | ) |
| **DOYLE LAND SERVICES, INC.,** | ) |
| **400 Poydras Street,** | ) |
| **Suite 1600** | ) |
| **New Orleans, LA 70130,** | ) |
| | ) |
| Serve registered agent: | ) |
| | ) **Case No.  3:18cv00439** |
| **John Warren Doyle** | ) |
| **400 Poydras Street,** | ) |
| **Suite 1600** | ) |
| **New Orleans, LA 70130,** | ) |
| | ) |
| **DOMINION ENERGY TRANSMISSION, INC.,** | ) |
| **925 White Oaks Blvd.** | ) |
| **Bridgeport, WV 26330,** | ) |
| | ) |
| Serve registered agent: | ) |
| | ) |
| **CT Corporation System,** | ) |
| **4701 Cox Road** | ) |
| **Suite 285** | ) |
| **Glen Allen, Virginia 23060,** | ) |
| | ) |
| *Defendants.* | ) |

_____)

**CIVIL COMPLAINT FOR EQUITABLE**
**AND MONETARY RELIEF AND DEMAND FOR JURY**

Plaintiff Donna Rivers brings this civil complaint of unlawful discrimination and

retaliation under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*,

("ADA") and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, ("ADEA")

1

against Defendants Doyle Land Services, Inc. ("Doyle") and Dominion Energy Transmission, Inc. ("Dominion").

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, specifically, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, (ADEA).

2. On December 13, 2016, Rivers filed a charge of discrimination with the EEOC, and on March 30, 2018, the EEOC issued a dismissal and notice of rights.

3. This Court has personal jurisdiction over Doyle because Doyle has substantial and deliberate contacts with the Commonwealth of Virginia.

4. This Court has personal jurisdiction over Dominion because Dominion has substantial and deliberate contacts with the Commonwealth of Virginia.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Doyle may be found in this District as it maintains an office location at 131 Temple Lake, Suite 300, Colonial Heights, VA 23834, and regularly and/or systematically conducts affairs or business activities in this District.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Dominion may be found in this District as it maintains an office location at 120 Tredagar St., Richmond, VA 23219, and regularly and/or systematically conducts affairs or business activities in this District.

## PARTIES

7. Plaintiff Donna Rivers is a resident of Amelia County, Virginia, and worked as a Senior Right of Way Agent for Doyle.

2

8.     Defendant Doyle is a Louisiana corporation that maintains its principal place of business at 400 Poydras Street, Suite 1600, New Orleans, Louisiana 70130. Doyle maintains an office location at 131 Temple Lake, Suite 300, Colonial Heights, Virginia 23834, and conducts business throughout the Commonwealth of Virginia.

9.     Defendant Dominion is a Delaware corporation that maintains its principal place of business at 925 White Oaks Blvd., Bridgeport, West Virginia 26330. Dominion maintains an office location at 120 Tredagar St., Richmond, Virginia 23219, and conducts business throughout the Commonwealth of Virginia.

## FACTUAL ALLEGATIONS

10.     Rivers is a fifty-seven year old female. She has worked in the real estate and easement acquisition industry since 1990.

11.     On or about February 15, 2014, Doyle hired Rivers as a senior right of way acquisition agent ("acquisition agent") working in Calhoun, Georgia.

12.     Doyle provides land services support for the United States energy industry. Oil and natural gas companies contract with companies like Doyle to complete pipeline preparation work prior to laying new pipelines. The work includes having acquisition agents secure easements from landowners who own property along the pipeline route.

13.     Rivers performed well at Doyle, and Rivers's first boss, Art Cook, often referenced Rivers's work as an example for other employees to emulate.

14.     In or about March 2014, Rivers learned that Doyle had won a contract with Dominion for work in Virginia on Dominion's Atlantic Cost Pipeline ("ACP") project. Thereafter Rivers requested to transfer to this project because she owns a home in Virginia, and her daughter and family live in Virginia.

15. Accordingly Rivers called Doyle chief operating officer John Warren Doyle, Jr. ("Warren Jr.") and requested to transfer to the ACP project. Warren Jr. denied Rivers's request. Rivers then went to Cook and asked him to speak to Warren Jr. about her transfer request. Cook asked Warren Jr. to approve Rivers's transfer, but Warren Jr. again denied the request.

16. Thereafter Rivers applied to positions with other companies that had won easement work for the ACP project. Rivers submitted her resignation when she received a job offer from Percheron Field Services, a Doyle competitor also handling ACP work in Virginia.

17. When Warren Jr. learned of Rivers's resignation, he called her and said, "Please stay with Doyle, and I will let you go work on the project in Virginia. I do not want to lose good agents like you. I did not realize the transfer meant that much to you."

18. Accordingly Rivers agreed to not resign, and Doyle transferred her to work on the Dominion ACP project in or about June 2014. Larry Summerville became Rivers's new boss in or about August 2014.

19. Dominion's ACP project is a 600-mile underground natural gas transmission pipeline running through Virginia and North Carolina. Dominion employed program manager Justin Wolford to oversee the Doyle acquisition agents. Dominion also makes hiring and firing recommendations to Doyle.

20. In or about September 2014, Rivers was diagnosed with breast cancer. Rivers told Summerville about her diagnosis, and in turn he told her to "keep it between us."

21. Rivers had two surgeries to remove her cancer in October and November 2014, and she then started once weekly chemotherapy treatments. Rivers lost all of her hair by late December 2014, and on or about January 19, 2015, Rivers finished chemotherapy treatments and started thirty days of radiation. Rivers's hair loss was evident throughout 2016.

4

22.     Rivers did not take any days off work during her cancer treatment, as she took her computer to chemotherapy treatments and worked in the morning before treatment or in the evenings after treatment. Rivers communicated with Summerville regularly during her chemotherapy and radiation treatments to advise if a treatment appointment conflicted with a work appointment. Doyle paid Rivers and all other acquisition agents a daily rate. Doyle does not provide any paid annual or sick leave, so any leave Rivers would have taken who have been unpaid.

23.     In or about November 2014, Rivers told Summerville that her daughter was driving her to meet with landowners because she was unable to drive herself due to the effects of her surgery the previous day.

24.     In or about November 2014, Rivers's coworker Ron Burroughs offered to drive her to her land tracts, which were in close proximity to his land tracts, because he saw that Rivers was unable to drive because of pain from her surgery.

25.     In or about December 2014, Rivers requested a one day extension on an assignment because her chemotherapy treatment that day had made her too nauseated and weak to finish the assignment the evening after chemotherapy.

26.     Rivers wore a bandana and baseball cap to work in an effort to downplay her hair loss, and she intentionally remained out of sight in the back of the office when Doyle or Dominion management employees came to the office because Summerville had directed her to keep her cancer diagnosis between them.

27.     On one occasion a Doyle coworker said to Rivers in reference to her bandana and baseball hat, "Either the company has a new dress code, or you have cancer." Rivers then realized it was futile to try to hide that she had cancer, and so she stopped hiding when

management came to the office.

28. In the midst of Rivers's cancer treatments in or about January 2015, Summerville asked her to report to the office to help "the girls," which is how he referred to the entirely female administrative staff, with filings. Rivers was the only female acquisition agent at that time, and she was the only employee Summerville asked to help with administrative tasks on a continuous and daily basis.

29. In or about February 2015, Rivers learned that Summerville had assigned all of her land tracts to other agents. Rivers therefore had no work to do other than the administrative tasks that Summerville had assigned to her. Rivers was able to reacquire her land tracts by asking the acquisition agents to whom they had been assigned for them back.

30. In or around the summer of 2015, Doyle hired Collin Constantin as Rivers's new boss. Constantin is friends with Taylor Doyle, Associate General Counsel at Doyle. Constantin is in his thirties and had no prior experience as a project manager or acquisition agent

31. When Constantin first started as Rivers's supervisor on the ACP project, Rivers commented to him that it was great to see so younger employees starting in the industry. Constantine replied, "Are you sure about that?"

32. Rivers successfully acquired easements throughout 2015 and early 2016 for many of the land tracts that Doyle had assigned her. However, Doyle directed Rivers in some cases to delay working on certain land tracts classified as "timber tracts" because Doyle was waiting to receive timber values so that it could properly value the land before Rivers negotiated easements. Doyle also delayed Rivers's ability to acquire certain easements because it had incorrect land boundaries for many of her land tracts, and so Rivers was unable to negotiate easements with landowners until Doyle provided her with the corrected land boundaries.

33. In or about December 2015, Rivers saw a Facebook posting by Doyle acquisition agent Jennifer Needs asking if any of her friends were looking to get into the acquisition agent business. The post stated, "The only way to get into this business is to know someone. Well, now you know that someone. It comes with a really sweet paycheck." Needs is close friends with Wolford.

34. Later, in or about December 2015, Doyle hired eight new acquisition agents and several office employees for Dominion's ACP project. All of the new employees were in their twenties and thirties and cancer free. All of the new Acquisition Agents were friends with Wolford. The new office employees were friends Taylor Doyle and Constantin.

35. Shortly thereafter Constantin terminated Rivers on or about March 7, 2016. When he communicated the news Constantin told Rivers that it was his decision to terminate her. Constantin also terminated two other acquisition agents that day who are older than Rivers.

## COUNT I
### Americans with Disabilities Act,
### 42 U.S.C. § 12101 *et seq.*
### Discrimination Based on Disability
### Against Defendants Doyle and Dominion

36. Rivers incorporates the allegations in the foregoing paragraphs as though alleged herein.

37. Rivers is an "employee" as the term is defined at 42 U.S.C. § 12101, *et seq.*

38. Doyle is an "employer" as the term is defined at 42 U.S.C. § 12101, *et seq.*

39. Dominion is an "employer" as the term is defined at 42 U.S.C. § 12101, *et seq.*

40. Rivers had a "disability" as that term is defined at 42 U.S.C. § 12102(1) in that she had a "physical . . . impairment that substantially limits one or more [of her] major life activities" or she was "regarded as having such an impairment." Rivers had cancer, a condition

that substantially limited one or more of her major life activities or her employers regarded her as disabled because of her cancer diagnosis.

41.     Doyle and Dominion discriminated against Rivers with malice, or with reckless indifference, when it terminated her.

42.     Rivers has exhausted her administrative remedies under the ADA.

43.     Rivers sustained damages as the result of Doyle and Dominion's illegal discrimination in violation of the ADA, including but not limited to, lost wages, lost opportunity to increase her wages, damage to her career, and emotional, mental, and physical distress and anxiety.

44.     Rivers is entitled to such legal or equitable relief as will effectuate the purposes of the ADA, including, but not limited to economic damages including front and back pay, reinstatement, non-economic compensatory damages including damages for emotional distress or mental anguish, punitive damages, reasonable attorney's fees and costs, and any other legal and/or equitable relief that this Court deems appropriate.

**COUNT II**
**Americans with Disabilities Act**
**42 U.S.C. § 12101** *et seq***.**
**Retaliation Based on Disability**
**Against Defendant Doyle**

45.     Rivers incorporates the allegations in the foregoing paragraphs as though alleged herein.

46.     Rivers is an "employee" as the term is defined at 42 U.S.C. § 12101, *et seq.*

47.     Doyle is an "employer" as the term is defined at 42 U.S.C. § 12101, *et seq.*

48.     Dominion is an "employer" as the term is defined at 42 U.S.C. § 12101, *et seq.*

49.     At all times relevant to this complaint, Rivers suffered from a disability that

8

affected a major life activity and her employer regarded her as disabled.

50.     At all times relevant to this complaint, Doyle was qualified to perform the essential functions of her job under 42 U.S.C. § 12111 and 29 C.F.R. § 1630.2(m).

51.     Doyle violated 42 U.S.C. § 12203 by retaliating against Rivers for engaging in protected conduct.

52.     Doyle retaliated against Rivers with malice, or with reckless indifference, when it terminated her.

53.     Rivers engaged in protected conduct under the ADA when she reported to Summerville that her daughter was accommodating her inability to drive due to cancer treatments and when she requested a day extension to complete an assignment because of the effects of her cancer treatment.

54.     Doyle retaliated against Rivers when it terminated her.

55.     Rivers exhausted her administrative remedies under the ADA.

56.     Rivers sustained damages as the result of Doyle's illegal retaliation in violation of the ADA, including but not limited to, lost wages, lost opportunity to increase her wages, damage to her career, and emotional, mental, and physical distress and anxiety.

57.     Rivers is entitled to such legal or equitable relief as will effectuate the purposes of the ADA, including, but not limited to economic damages including front and back pay, reinstatement, non-economic compensatory damages including damages for emotional distress or mental anguish, punitive damages, reasonable attorney's fees and costs, and any other legal and/or equitable relief that this Court deems appropriate.

**COUNT III**
**Age Discrimination in Employment Act,**
**29 U.S.C. § 623**
**Discrimination Based on Age**
**Against Defendants Doyle and Dominion**

58.     Rivers incorporates the allegations in the foregoing paragraphs as though alleged herein.

59.     Rivers is an "employee" as the term is defined at 29 U.S.C. § 623, *et seq*.

60.     Doyle is an "employer" as the term is defined at 29 U.S.C. § 623, *et seq*.

61.     Dominion is an "employer" as the term is defined at 29 U.S.C. § 623, *et seq*.

62.     Rivers is within the class of individuals protected under the ADEA because she is over the age of forty and was fifty-five at the time of her termination.

63.     Doyle and Dominion discriminated against Rivers because of her age when it terminated her and replaced her with a significantly younger and significantly less experienced, less qualified employees.

64.     This adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination based on Rivers's age.

65.     Rivers has exhausted her administrative remedies under the ADEA.

66.     Rivers sustained damages as the result of Doyle and Dominion's illegal discrimination in violation of the ADEA, including but not limited to, lost wages, lost opportunity to increase her wages, damage to her career, and emotional, mental, and physical distress and anxiety.

67.     Rivers is entitled to such legal or equitable relief as will effectuate the purposes of the ADEA, including but not limited to economic damages and reasonable costs and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Donna Rivers respectfully requests that the Court enter judgment in her favor and award to her the following relief:

A.      Judgment against Defendants Doyle and Dominion in an amount of any wages, salary, employment benefits, or other compensation denied or lost to Rivers, including economic damages, liquidated damages, compensatory and punitive damages to be determined at trial;

B.      Pre-judgment interest;

C.      Interest due on unpaid wages;

D.      Reasonable attorney's fee and costs of this litigation;

E.      Reasonable expert witness fees; and

F.      Any other relief that this Honorable Court deems just and proper to award.

## JURY DEMAND

Plaintiff demands a jury for all issues proper to be so tried.

Respectfully submitted,

/s/ Nicholas Woodfield
Nicholas Woodfield, Esq.
VSB# 48938
R. Scott Oswald, Esq.
VSB# 41770
The Employment Law Group, P.C.
888 17th Street, NW, 9th Floor
Washington, D.C. 20006
(202) 261-2812
(202) 261-2835 (facsimile)
nwoodfield@employmentlawgroup.com
soswald@employmentlawgroup.com

11